UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARRIE SMITH and AMANDA JONES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>GERBER PRODUCTS COMPANY<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Carrie Smith and Amanda Jones ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Gerber Products Company ("Defendant" or "Gerber").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

## NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of Defendant's Gerber Yogurt Melts and Gerber Fruit & Veggies Melts (the "Products")[1] that claim to have "No Preservatives."  This representation is false and/or misleading because the Products contain citric acid, ascorbic acid and/or sodium ascorbate—three well-known preservatives commonly used in food products.

2. Defendant's "No Preservatives" representation is featured on the Products' labeling in order to induce health-conscious consumers to purchase foods that are free from preservatives.  Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

---

[1] The Products include all of Defendant's packaged snack products that are advertised as containing "No Preservatives" but contain citric acid, ascorbic acid, and/or sodium ascorbate. On information and belief, the Products include all variations and flavors of Yogurt Melts and Fruit & Veggie Melts, including: Strawberry Yogurt Melts, Very Berry Blend Fruit & Veggie Melts, Truly Tropical Blend Fruit & Veggie Melts, Mixed Berries Yogurt Melts, Banana Vanilla Yogurt Melts, and Peach Yogurt Melts.

2

3. Defendant has profited unjustly as a result of its deceptive conduct. Plaintiffs therefore assert claims on behalf of themselves and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

5. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in New York.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this District.

## PARTIES

7. Plaintiff Carrie Smith is a citizen of New York who resides in White Plains, New York. Ms. Smith has purchased the Products on numerous occasions over the prior year, including the Gerber Strawberry Yogurt Melts and Gerber Very Berry Fruit & Veggie Melts varieties. She typically purchases the Products from a ShopRite store in White Plains, New York, with her most recent purchase taking place in or around August 2023. In purchasing the Product, Ms. Smith relied on Defendant's false, misleading, and deceptive marketing of the Product containing "No Preservatives." Ms. Smith understood that "No Preservatives" meant the Product did not contain any preservatives. However, the Product she purchased contained the

preservatives citric acid and ascorbic acid. Had Ms. Smith known the "No Preservatives" representation was false and misleading, she would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price.

8. Plaintiff Amanda Jones is a citizen of New York who resides in New York, New York. Ms. Jones purchased Gerber Banana Vanilla Yogurt Melts from the Food Bazaar Supermarket in Long Island City, New York in or around July 2023. In purchasing the Product, Ms. Jones relied on Defendant's false, misleading, and deceptive marketing of the Product containing "No Preservatives." Ms. Jones understood that "No Preservatives" meant the Product did not contain any preservatives. However, the Product she purchased did contain the preservative sodium ascorbate. Had Ms. Jones known the "No Preservatives" representation was false and misleading, she would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price.

9. Defendant Gerber Products Company is corporation organized under the laws of Delaware with its principal place of business located in Freemont, Michigan. Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

10. **Defendant misrepresents that the Products contain "No Preservatives."** Defendant advertises on back label of the Products that they contain "No Preservatives." Thus, reasonable consumers are led to believe the Products are free from preservatives. However, the Products contain citric acid, ascorbic acid, and/or sodium ascorbate, which are all well-known preservatives. Examples of the Products' labeling, along with their ingredient list, are depicted below:











11. **Citric acid, ascorbic acid, and sodium ascorbate are preservatives.** Citric a acid, ascorbic acid, and sodium ascorbate are preservatives as the term is defined by the FDA in 21 C.F.R. §101.22(a)(5): "The term *chemical preservative* means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal

properties."

12.     Food preservatives are classified into two main groups: antioxidants and antimicrobials. Food scientists agree that the chemical properties of citric acid, ascorbic acid, and sodium ascorbate make them preservatives.

13.     In its "Overview of Food Ingredients & Colors," the FDA lists citric acid as a preservative.[2] The FDA also recognizes that preservatives, like citric acid, are commonly used in packaged foods such as the Products.

14.     Under the "What They Do" table heading, the FDA states that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[3]

15.     The FDA's classification of citric acid as a preservative is also reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[4]

16.     **Citric acid has antioxidant and antimicrobial properties.** Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals. Certain enzymes

---

[2] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf.

[3] *Id.*

[4] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.

naturally exist in food products that oxidize and breakdown the food products' molecules. Citric acid deactivates these enzymes, thereby functioning as a preservative.[5] Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[6]

17. Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[7] This is yet another reason why food scientists classify citric acid as a preservative.[8]

18. **Ascorbic acid has antioxidant and antimicrobial properties.** Ascorbic acid is one of the most widely used food additives for use as an antioxidant and preservative. It functions as an antioxidant by protecting double bonds and scavenging oxygen.[9] Ascorbic acid also has antimicrobial properties that inhibit the growth of bacterial strains.[10] Its low pH prevents microbial growth, thereby preventing food spoilage and preserving freshness and color.

19. Further, studies have demonstrated that ascorbic acid in conjunction with lactic acid—another ingredient present in the Products—is effective in inhibiting the growth of *E. coli*

---

[5] *Id.*

[6] P. Davidson et al., *Chapter 20: Antimicrobial Agents*, in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

[7] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.00023.

[8] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid.

[9] W. Cort, *Antioxidant Properties of Ascorbic Acid in Foods*, ADVANCES IN CHEMISTRY, Vol. 200, Chapter 22, pp 533-550. https://pubs.acs.org/doi/10.1021/ba-1982-0200.ch022.

[10] S. Mousavi et al., *Immunomodulatory and Antimicrobial Effects of Vitamin C*, EUROPEAN JOURNAL OF MICROBIOLOGY & IMMUNOLOGY, 2019 Aug 16; 9(3):73-79. https://akjournals.com/view/journals/1886/9/3/article-p73.xml.

bacteria in food.

20.     **Sodium ascorbate has antioxidant properties.** As a food additive, sodium ascorbate is used as an antioxidant.[11]

21.     **The ingredient listing of ascorbic acid is misleading.** The ingredient list misleads consumers by listing ascorbic acid as "Vitamin C (Ascorbic Acid)" under the heading "Vitamins & Minerals." By listing within parentheses under a subheading, consumers will pay it less attention than the more familiar vitamin C. While ascorbic acid and vitamin C are authorized synonyms, this is only in the context for listing nutrient information, not in the ingredient list. 21 C.F.R. § 101.9(c)(8)(v).

22.     **Subjective intent of use is immaterial.**  Citric acid, ascorbic acid and sodium ascorbate function as preservatives in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding them to the Products, such as to impart flavor.[12]

23.     Even if the Products' citric acid, ascorbic acid and sodium ascorbate do not function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so.  *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the

---

[11] *See Approved additives and E numbers*, Food Standards Agency https://www.food.gov.uk/business-guidance/approved-additives-and-e-numbers.

[12] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").


power of preserving.");[13] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving").[14]

24. **The Products' citric acid is chemically processed.** Citric acid is naturally occurring when derived from certain citrus fruits. That is not true of the citric acid contained in the Products. The citric acid contained in the Products is commercially manufactured and the result of extensive chemical processing.[15] In fact, more than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[16] Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[17]

25. **Defendant exploits consumer demand for preservative-free food.** Defendant's misrepresentation seeks to capitalize on consumers' preference for products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans,

---

[13] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

[14] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative.

[15] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[16] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y; K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690.

[17] *Id.*

as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that "free-from" foods are healthier than foods without a "free-from" claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[18]

26. According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[19]

27. Accordingly, Defendant's misrepresentations are material to reasonable consumers. Reasonable consumers would attach importance to a representation that a product has "No Preservatives" because research demonstrates that a majority of consumers place importance on "preservative-free" claims.

28. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[20] Thus, consumers are willing pay a premium for healthy, non-preservative food items, as they hoped for in purchasing the Products.

29. Defendant's misleading and deceptive practices proximately caused harm to Plaintiffs and the proposed class members who suffered an injury in fact and lost money or

---

[18] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed.

[19] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[20] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html.

property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

30. Plaintiffs seek to represent a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased Defendant's Products (the "Class").

31. Plaintiffs seek to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Class, the "Classes").

32. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

33. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiffs and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiffs and the members of the Classes are entitled to attorneys' fees and costs.

34. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

35. Plaintiffs are adequate representatives of the Classes because her interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

36. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York General Business Law ("GBL") § 349**
**(On behalf of the New York Subclass)**

37. Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

38. Plaintiffs bring this cause of action on behalf of themselves and members of the New York Subclass against Defendant.

39. Plaintiffs and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

40. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

41. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

42. Defendant made false and misleading statements by marketing the Products as containing "No Preservatives" when in fact they contain the preservatives citric acid, ascorbic acid, and/or sodium ascorbate.

43. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

44. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiffs, about the quality of its Products, as discussed throughout.

45. Plaintiffs and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

46. Defendant's actions set forth above occurred in the conduct of trade or commerce.

47. The foregoing deceptive acts and practices were directed at consumers.

48. Defendant's misleading conduct concerns widely-purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

49. Plaintiffs and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the "No Preservatives" misrepresentation, as described herein.

50. On behalf of themselves and other members of the New York Subclass, Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

### COUNT II
### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

51. Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

52. Plaintiffs bring this claim individually and on behalf of the members of the New York Subclass against Defendant.

53. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

54. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as containing "No Preservatives" when in fact they contain the preservatives citric acid, ascorbic acid, and/or sodium ascorbate.

55. Plaintiffs and reasonable consumers understand Defendant's misrepresentations to mean that the Products do not contain preservatives.

17

56. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

57. This misrepresentation has resulted in consumer injury or harm to the public interest.

58. As a result of this misrepresentation, Plaintiffs and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the "No Preservatives" misrepresentation, as described herein.

59. By reason of the foregoing and as a result of Defendant's conduct, Plaintiffs and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III
### Breach of Express Warranty
### (On behalf of the Class and the New York Subclass)

60. Plaintiffs incorporates by reference and re-alleges herein all paragraphs alleged above.

61. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

62. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain "No Preservatives."

63. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiffs

and members of the Classes.

64. In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, ascorbic acid, and/or sodium ascorbate, three well-documented preservatives. By falsely representing the Products in this way, Defendant breached its express warranty.

65. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained a preservative.

66. On September 12, 2023, Plaintiff Smith sent Defendant, via certified mail, a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom. Defendant did not respond to Plaintiff's letter.

## COUNT IV
### Unjust Enrichment
### (In the Alternative)

67. Plaintiffs incorporates by reference and re-alleges herein all paragraphs alleged above.

68. Plaintiffs bring this claim individually and on behalf of members of the Class against Defendant.

69. Plaintiffs and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

70. Defendant has knowledge of such benefits.

71.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchase of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Preservatives" when in fact they contain citric acid, ascorbic acid, and/or sodium ascorbate, which are known preservatives.

72.   Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)   For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Class and New York Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and New York Subclass;

(b)   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c)   For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d)   For prejudgment interest on all amounts awarded;

(e)   For an order of restitution and all other forms of equitable monetary relief;

(f)   For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(g)   For an order awarding reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: November 7, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Julian C. Diamond*
     Julian C. Diamond

Alec Leslie
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  aleslie@bursor.com
       jdiamond@bursor.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
Email: nsuciu@milberg.com

Erin J. Ruben*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com

J. Hunter Bryson*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Telephone: (630) 796-0903
Email: hbryson@milberg.com

* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff*